**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:23-CR-00415 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES FLEMING |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE JAMES E. |
| | ) | GRIMES, JR. |
| DAVID A. STAATS, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER RESOLVING MOTION TO** |
| | ) | **SUPPRESS (ECF NO. 19)** |

Before the Court is a Motion to Suppress filed by Defendant David Staats.  (ECF No. 19).  Defendant moves to suppress the firearm and methamphetamine found by law enforcement after they purportedly seized Defendant without probable cause to believe that he had committed a crime, leading to an unlawful search of his vehicle.  The Government opposes Defendant's Motion, arguing that officers watched Defendant commit a traffic infraction prior to pulling him over, Defendant himself told officers that he had a firearm before any search of his person, and the inventory search of Defendant's car followed Defendant's arrest for possessing a firearm under disability.  (ECF No. 22).

This Court held a hearing on Defendant's Motion to Suppress on July 16, 2024.  (ECF No. 27, Trans. of Supp. Hrg.).  The Government put on one witness: Officer Curtis Gutscher, one of Defendant's two arresting officers.  Defendant offered no witnesses but cross-examined Officer Gutscher and presented several pieces of evidence, including body camera footage from both Officer Gutscher and his partner that evening, Officer Cook (Exhibits A, B, K); Defendant's police and tow reports (Exhibits H & M); still video images of Defendant's trunk (Exhibits L-1, L-2, L-3, & L-4); the text of Ohio Rev. Code Ann. 4511.39 (Exhibit D); and several maps of the area in

1

which the officers patrolled the evening of Defendant's arrest, including the location of Defendant's arrest (Exhibits T-1, T-2, & T-3).

The Court ordered the parties to submit post-hearing briefs in lieu of closing arguments. (ECF No. 27, PageID #164).  Defendant's post-hearing brief shifted his argument from unreasonable seizure to unlawful arrest; Defendant argues, since Officer Gutscher testified that Defendant was under arrest when handcuffed near the beginning of the incident, Officer Gutscher needed probable cause to believe Defendant had committed an arrestable crime.  (ECF No. 29, PageID #184).  In addition to the Government's timely post-hearing brief (ECF No. 28), this Court asked the Government to address Defendant's new unlawful-arrest argument in a second brief, which the Government filed.  (ECF No. 30).  The Government maintains that Defendant was lawfully arrested because he fled from police prior to his arrest, thus obstructing official business in violation of Ohio Rev. Code Ann. 2921.31.  (*Id.* at PageID #198–99).  For the following reasons, Defendant's Motion to Suppress (ECF No. 19) is **GRANTED IN PART** as to the methamphetamine and **DENIED IN PART** as to the firearm.

## I.    FACTUAL BACKGROUND

On May 5, 2023, Officer Gutscher and his partner, Officer Cook, watched Defendant pull to the side of Glendale Avenue and park without using a turn signal in violation of Ohio Rev. Code Ann. § 4511.39.  (ECF No. 1, Indictment, PageID #31; ECF No. 27, PageID #111).  The incident was recorded by body camera footage that was admitted into evidence by both the Government (Exhibit 1 (Gutscher body camera)) and the defense (Exhibits A (Gutscher body camera) and Exhibit B (Cook body camera)).

Officer Gutscher testified that he was patrolling a high-crime area in Canton when he saw Defendant pull over to park without signaling.  (ECF No. 27, PageID #111).  While parking, Defendant drove up onto the sidewalk next to Glendale Avenue and then back onto the road.  (*Id.*

2

at PageID #111–12).  Officer Gutscher then activated his cruiser's lights and siren.  (*Id.* at PageID #113).  Defendant and his passenger got out and began walking toward the front of the parked car. (*Id.*).  As Officers Gutscher and Cook exited their cruiser, the passenger fled northbound.  (*Id.* at PageID #116).  Officers did not pursue the passenger.  (*Id.*).

Officers instead issued several orders to Defendant: Officer Gutscher shouted, "Get over here," (Gov. Ex. 1/Def. Ex. A, 0:36); "Get back in the car," (*Id.* at 0:37); "Driver, back in the car, now," (*Id.* at 0:38–0:39).  As Officer Gutscher began approaching Defendant, he said, "Get back in the car," (*Id.* at 0:45); "Come here now," (*Id.* at 0:46); "Hands where we can see 'em," (*Id.* at 0:47).  During the issuance of these commands, Defendant can be seen near the hood of his car, moving slowly from the left headlight toward the right, at one point turning away from the officers. (*Id.* at 0:41–0:48).  Defendant turned away from Officer Gutscher again, this time suddenly and in the same direction in which the passenger fled.  (0:48).  Officer Cook's body camera also shows Defendant's sudden turn of his body northward.  (Def. Ex. B, 0:47–0:48).  Officer Gutscher testified that he became concerned for officer safety:

> At first I was concerned that he was going to flee, and then this—he started facing toward me, I told him to put his hands up, which he didn't, and started fooling near his pockets.  That's when I felt like he was trying to grab something and get himself into a good position [from which to engage in a fire fight].

(ECF No. 27, PageID #118).  Upon Officer Gutscher's running approach, Defendant turned around again to face Officer Gutscher and put up his hands defensively as Officer Gutscher pushed Defendant to the ground.  (Gov. Ex. 1/Def. Ex. A, 0:49–0:51).  Defendant landed on his hands and knees; Officer Gutscher pushed Defendant again until he was lying prone.  (*Id.* at 0:52).  Officer Gutscher testified that, following the take down, Defendant was under arrest for obstructing official business due to his flight from the scene, which occurred when Defendant turned northward.  (ECF No. 27, PageID #120, 148, 153).

3

After Officer Cook placed Defendant in handcuffs, Officer Gutscher helped Defendant to his feet and, observing Defendant's ankle monitor, asked Defendant whether he was on house arrest.  (*Id.* at PageID #119).  Before the officers searched Defendant's person, Defendant told officers that he had a firearm in his right pocket.  (*Id.* at PageID #120; Def. Ex. B, 2:04 ("I have a gun in my pocket.")).  Defendant's firearm was "loaded with one round in the chamber and four rounds in the magazine."  (*Id.* at PageID #123).  Once Defendant was in the back of the cruiser, Officer Gutscher searched Defendant's name in CJIS and found that Defendant was under disability for possessing a firearm.  (*Id.* at PageID #121, 123).

Due to Defendant's arrest and the passenger's flight, Officer Gutscher informed Officer Cook that they needed to impound the car, and therefore, conduct an inventory search.  (*Id.* at PageID #124–25).  Officer Gutscher explained that the inventory search ensures the safety of a person's valuable belongings, which are removed from the car and taken to the police station before the vehicle is towed.  (*Id.* at PageID #125).  He also testified that he thought he would find another firearm in Defendant's car.  (*Id.* at PageID #126).  The officers' search of Defendant's car produced a flip phone, a scale, and a large bag containing a white substance, later determined to be methamphetamine, which Officer Gutscher removed from a closed backpack.  (*Id.* at PageID #126–27; ECF No. 1, PageID #32).  Officer Gutscher testified that the Canton Police Department has a policy governing vehicle inventories and that he followed it that night, but offered no details regarding the policy's guidance on closed containers.  (ECF No. 27, PageID #130–31).  Officers did not take steps to secure Defendant's car audio equipment or tools found in his trunk.  (*Id.* at PageID #155–56).

Defendant has since been charged in a four-count indictment, including: (1) Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); Possession of a Firearm and Ammunition by a Person with Domestic Violence Conviction in

violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(8); Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and Possession of Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i)).

## II.    DISCUSSION

Defendant's Motion to Suppress invokes the Fourth amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Defendant argues that his Fourth Amendment rights were violated when (1) Officers Gutcher and Cook conducted a traffic stop without probable cause that Defendant violated a traffic law; (2) Officer Gutscher arrested Defendant without probable cause; and (3) Officers Gutscher and Cook searched and impounded his car without a valid arrest.  (ECF No. 29).

### A.  The Traffic Stop

Defendant argues that Officer Gutscher's stated reasons for pulling Defendant over—failure to signal when pulling over to park and driving on the sidewalk—are both factually incorrect and not credible.  Under Fourth Amendment jurisprudence, an automobile stop is a "seizure" of "persons," and therefore must be reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 809–10 (1996).  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810 (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam)).  An officer has probable cause to stop a vehicle when the officer observes a traffic violation.  *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 659, 699 (1979); *Mimms*, 434 U.S. at 109).

Here, the question is whether Defendant violated Ohio Rev. Code Ann. § 4511.39, which concerns turn and stop signals.  Ohio Rev. Code Ann. § 4511.39(A) states, in pertinent part:

> No person shall turn a vehicle . . . or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.
>
> When required, a signal of intention or turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle . . . before turning.

*Id.* Defendant argues that Ohio Rev. Code Ann. § 4511.39 does not require him to signal when parking on the side of a residential street without lane markings.  (ECF No. 29, PageID #181–82).  Defendant suggests that, because it is legal to pull away from a curb without signaling when there is no other traffic on the road, it is also legal to pull toward a curb without signaling when there is no other traffic on the road.  (*Id.* at PageID #181 (collecting cases)).  Defendant also notes, though, that at least one court interpreting R.C. § 4511.39 required a signal before pulling over to the curb, justifying an officer's traffic stop.  (*Id.* at PageID # 182 (citing *State v. Brunner*, No. 2007CA0028, 2008 WL 4118902, at *3 (Ohio Ct. App. Aug. 29, 2008)).

 *Brunner* is on point.  In that case, police stopped Brunner in a high crime area in Canton, Ohio after he failed to signal when pulling over to the curb to park.  *Id.* at *1.  Police asked Brunner to get out of his car.  *Id.*  Upon Brunner's exit, police observed two large pieces of crack cocaine. *Id.*  In addition to crack cocaine, police eventually found marijuana and a crack pipe under the driver's seat.  *Id.*  Brunner moved to suppress the drugs and challenged the validity of the stop.  *Id.* Interpreting Canton City Ordinance 331.14, which is identical in relevant substance to R.C. § 4511.39, the Court found:

> Officer Diels reasonably believed that appellant had violated the traffic ordinance based upon his interpretation of the traffic code.  He observed appellant pull to the curb on Second Street without signaling.  The evidence was undisputed that appellant moved from his lane of travel to the curb without activating a turn signal.  We find that although the traffic citation was minimal and perhaps pretextual, Officer Diels had reasonable suspicion to make the traffic stop.

*Id.* at *3. *See State v. Raleigh*, No. 2007-CA-31, 2007 WL 2994237, at *3 (Ohio Ct. App. Oct. 15, 2007) ("When police observe a traffic offense being committed the initiation of a traffic stop does not violate Fourth Amendment guarantees, even if the stop was pretextual or the offense was so minor that no reasonable officer would issue a citation for it.").

*State v. Mayo*, No. 1-22-28, 2023 WL 195630 (Ohio Ct. Ap. Jan. 17, 2023) contains similar facts and a similar outcome. There, the defendant pulled over and parked without signaling, causing the officer behind him to activate his lights and siren. *Id.* at *1. Finding that Defendant violated an ordinance identical in relevant substance to R.C. § 4511.39, the court explained that "in 1975, the Legislative Service Commission ("L.S.C.") stated that R.C. 4511.39 'requires a signal to be given not only before making a right or left turn, but also before changing lanes, passing another vehicle, *or pulling into or out of a parking place*." *Id.* at *6 (emphasis in original). It also found:

> Courts have applied R.C. 4511.39 and like municipal ordinances consistently with the L.S.C.'s commentary, concluding that a law enforcement officer may lawfully stop a vehicle if the driver fails to activate their turn signal before moving to the side of a roadway to park. *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶2 & 20 (defendant did not contest that he failed to activate his turn signal before pulling over to the curb to park, which supplied the officer with a 'lawful basis upon which * * * [to] initiate a traffic stop"); *State v. Brunner*, 5th Dist. Stark No. 2007CA00285, 2008-Ohio-4519, ¶ 19 (where the "evidence was undisputed that appellant moved from his lane of travel to the curb [to park] without activating a turn signal," officer had reasonable suspicion to make a traffic stop).

Defendant's briefs admit that he moved right on a highway, implicating R.C. 4511.39. (*See* ECF No. 19, PageID #75 ("Mr. Staats **pulled over** to the curb and parked."); ECF No. 29, PageID #182 ("Mr. Staats' action of lawfully parking his vehicle **on the side** of an unmarked residential street . . . .") (emphasis added)). Although Defendant complains that the traffic violation itself is not shown on either officer's body camera, Defendant offered no evidence of his own to refute

Officer Gutscher's testimony that he observed Defendant pull over and park without using his turn signal. Nor is there any evidence before the Court that Defendant actually *used* his turn signal. This Court finds Defendant's arguments about driving on the sidewalk equally unavailing for the same reason; though Defendant argues that the distance from the road to the sidewalk was such that Defendant would have had to drive "five to seven feet" beyond the curb, Defendant produced no evidence to refute Officer Gutscher's testimony that Defendant did, in fact, drive on the sidewalk.

Defendant also questions the credibility of Officer Gutscher's testimony about Defendant's car traversing the sidewalk before parking. Defendant argues:

> Gutscher's testimony is implausible. Mr. Staats was driving a 2004 Pontiac Grand Prix. That vehicle is just under six feet wide. If Mr. Staats had driven five to seven feet beyond the curb, the entire car (or almost all of the car) would have been over the curb. Yet, Gutscher does not mention the entire vehicle being off the roadway. He only testified that the front and back passenger tires were on the sidewalk. The body camera footage does not support Gutscher's testimony. The video footage never shows Mr. Staats' [*sic*] vehicle on the roadway, and the timing of the events seen on the body camera undermines Gutscher's version of the events.

(ECF No. 29, PageID #183). The Court disagrees for several reasons. First, Officer Gutscher's testimony does not exclude the possibility that Defendant's whole car left the road; his affirmative testimony about the location of the passenger tires is not undone by his silence on the location of the other two tires. Second, Officer Gutscher made statements during the stop that corroborate his later testimony about Defendant driving on the sidewalk. Contemporaneous with the events unfolding on the night of the stop, Defendant asked Officer Gutscher why he was pulled over. (Gov. Ex. 1/Def. Ex. A, 1:56–1:57). Officer Gutscher responded, "Well, for one you failed to signal to get over when you were parking, two is for pulling on the . . . ." Officer Cook interrupted Officer Gutscher, causing him not to finish the statement (*Id.* at 2:00–2:02). However, minutes later when Officer Cook asked Officer Gutscher what crimes he should cite Defendant for, Officer

Gutscher responded, "Obstructing, failure to signal, he drove on the sidewalk." (*Id.* at 7:21–7:27). Thus, Officer Gutscher's testimony about Defendant driving on the sidewalk is not only credible, but it is corroborated by a recording of the events in real time.

The Government produced witness testimony to establish that Defendant parked without using his signal in violation of R.C. § 4511.39.  Defendant did not produce any witness testimony or evidence to establish that Defendant did not violate R.C. § 4511.39; Defendant's questioning of Officer Gutscher did not lessen Officer Gutscher's credibility regarding the reasons that Defendant was pulled over, and body camera footage captured contemporaneously with the stop supports Officer Gutscher's testimony.  The Court therefore finds that Officer Gutscher had probable cause to believe that Defendant had committed a traffic violation when Officer Gutscher stopped him that night.  As a result, the stop did not violate Defendant's Fourth Amendment rights.

### B.  The Arrest

Defendant initially moved to suppress the firearm based on Officer Gutscher's *Terry* frisk of Defendant without reasonable suspicion that Defendant was armed and dangerous.  (ECF No. 19, PageID #79).  After the Suppression Hearing, Defendant recharacterized that argument into one for unlawful arrest; Defendant argues that, because Officer Gutscher testified that Defendant was under arrest when Defendant was handcuffed, Officer Gutscher lacked probable cause to arrest Defendant for a crime.  (ECF No. 29, PageID #184).  The Government objects to Defendant's new unlawful-arrest argument.  (ECF No. 28, PageID #174).  Nevertheless, the Court Ordered the Government to address Defendant's unlawful-arrest argument, and the Government did so.  (ECF No. 30).  In the interest of deciding this matter on the facts as they were established at the Suppression Hearing, the Government's objection is overruled.

Defendant is correct; Officer Gutscher considered Defendant under arrest for obstructing official business when Defendant was handcuffed.  (ECF No. 27, PageID #120, 148).  The validity

of Defendant's arrest therefore depends on whether Officer Gutscher had probable cause to believe that Defendant obstructed official business in violation of Ohio Rev. Code Ann. § 2921.31 when Defendant was handcuffed.   *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). Probable cause to arrest must be based on "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Id.* (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) ("The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty.").  Such probability is tested against "all facts and circumstances *within an officer's knowledge at the time of an arrest*."  *Id.* (citing *Est. of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (emphasis in original)).

Ohio's obstructing-official-business statute provides:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

Ohio Rev. Code Ann. § 2921.31(A).  "Ohio courts have interpreted this statute to criminalize only affirmative acts, not the failure to act."  *State v. Certain*, No. 07CA3003, 905 N.E.2d 1259, 1264 (Ohio Ct. App. 2009) (collecting cases) (finding that defendant obstructed official business when he fled from police).  Thus, to convict an individual for obstructing official business in Ohio, law enforcement must observe (1) an affirmative act; (2) done with the purpose to prevent, obstruct, or delay the officer; (3) without privilege to do so; (4) that actually hampers or impedes the officer; (5) while the officer is acting in his official capacity.  *State v. Henry*, 110 N.E.3d 103, 116 (Ohio Ct. App. 2018) (citing *State v. Dice*, No. 9-04-41, 2005 WL 1205336, at *4 (Ohio Ct. App. May 3, 2005)).

Ohio courts interpreting R.C. § 2921.31 routinely find that a defendant's flight from law enforcement and refusal to comply with lawful orders, under circumstances similar to those here, constitute affirmative acts that hinders an officer's performance of his lawful duties. *See, e.g.*, *Certain*, 905 N.E.2d at 1264 (finding that defendant obstructed official business when he fled from police); *State v. Hasley*, No. 03 MA 215, 2004 WL 2980377, at *6 (Ohio Ct. App. Dec. 15, 2004) (finding that the defendant's flight from officers delayed the completion of the officer's lawful duties, despite the fact that defendant was stopped for a minor, non-arrestable offense); *State v. Casey*, 85 N.E.3d 1283, 1291–92 (Ohio Ct. App. 2017) ("walking away from a police investigation and failing to heed a police officer's orders to stop can be sufficient to find a person guilty of obstructing official business."); *Dayton v. Turic*, No. 20149, 2005 WL 78498, at *6 (Ohio Ct. App. Jan. 14, 2005) (finding obstruction when the defendant refused lawful orders and walked away from officers).

An obstructive act must actually delay law enforcement's performance of her official duties; the delay caused by an affirmative act must be more than "de minimis." *State v. Coffman*, No. C-230411, 2024 WL 1339017, at *4 (Ohio Ct. App. Mar. 29, 2024). Similarly, there must be a causal relationship between the defendant's affirmative act and the officer's delayed performance of her duties. *Id.*

The Government points to *State v. Lenzy*, No. 2018CA00023, 2018 WL 4150868 (Ohio Ct. App. Aug. 27, 2018) to support its argument that Defendant fled from police. In *Lenzy*, officers spotted the defendant walking down the middle of a Canton, Ohio street in a high-crime area. *Id.* at *1. Officers pulled their cruiser up to the defendant, got out, and called the defendant over to them. *Id.* The defendant asked why they wanted to stop him; officers said that it was because he was walking in the middle of the road. *Id.* The defendant then "took a few steps away from the

officers" and appeared to reach for his waistband. *Id.* Concerned for their safety, officers tackled the defendant and later seized crack cocaine and a suboxone pill from him. *Id.*

At the suppression hearing in *Lenzy*, one of the officers testified that the defendant "began to kind of just walk away, not acknowledge us. Obstructing, if you will" and that the defendant had taken two or three steps, delaying official police business by about one second. *Id.* This testimony was sufficient for the Ohio appellate court to affirm the trial court's denial of the suppression motion:

> The officers only needed probable cause to arrest, not proof beyond a reasonable doubt [the defendant] was obstructing official business. Although the delay was slight, based on the officer's testimony [the defendant] walked away and had not taken any action to comply with their request when they developed a reasonable suspicion he was armed and took him to the ground, we agree with the trial court they had probable cause to arrest him for obstructing official business. Therefore, we find the court did not err in finding the search justified as incident to a lawful arrest.

*Id.* at *5. The Government argues that *Lenzy* is dispositive; under *Lenzy*, Defendant's northward steps away from the officers and failure to obey their commands establish that Defendant was obstructing official business in violation of R.C. 2921.31(A).

In another similar case, *City of Akron v. Burns*, No. 21338, 2003 WL 21658336, at *10 (Ohio Ct. App. Jul. 16, 2003), an officer tried to pull over the defendant, Burns, but instead of pulling over, Burns continued down the road and later pulled into his driveway. After finding that this was insufficient to constitute "flight" for the purpose of Ohio's obstruction of official business statute, the court determined that Burns nevertheless obstructed when he refused the officer's command to get back in his car; although Burns was both verbally and physically uncooperative, the court found intent to impede the investigation, in part, based on Burns's affirmative, physical refusal to comply with the officer's lawful orders. *Id.*

12

The Court first finds that Defendant's steps away from officers constitute flight under *Lenzy*, and that such flight was an affirmative act in defiance of the officers' orders.  Ohio case law is replete with examples of courts finding that flight from officers constitutes an affirmative act to support an obstruction charge, and *Lenzy* makes clear that such flight need only delay an officer's performance of her official duties by one or two seconds.  Such was the case here: Defendant turned away from officers in defiance of their commands, walked to the front of his car, then took abrupt steps northward in the same direction in which his passenger fled.  Like *Lenzy*, Defendant's failure to comply with the officers' orders and subsequent effort to flee—even if only a few steps— is a sufficient affirmative act to support an arrest for obstructing official business.

The Court also finds*, consistent with *Burns*, that Defendant's failure to obey the officers' commands demonstrates his intent to obstruct officers.  While Defendant did not become verbally hostile, he did turn away from officers twice and failed to obey any of the commands he was given; he neither got back into his car, raised his hands so officers could see them, nor approached the officers on foot, as he was commanded to do.  Furthermore, again under *Lenzy*, the delay in the officers' ability to perform their job with respect to Defendant was  at least as long as the delay in *Lenzy*, as evidenced by the officers' body camera footage.   Officer Gutscher began giving commands 36 seconds into the body camera footage presented by both parties.  (Gov. Ex. 1/Def. Ex. A, 0:36).  Defendant spends approximately 13 seconds shuffling around in front of his car, ignoring the officers, and taking steps away from the officers, before Officer Gutscher tackles him. (*Id.* at 0:36–0:49).  Again, reviewing the body camera footage, there is no question that Defendant's flight and failure to obey commands  delayed the officers in their performance of their work—the delay was around 13 seconds.  Therefore, the Court agrees with the Government that Officer Gutscher had probable cause to arrest Defendant for obstructing official business in violation of R.C. 2921.31(A).

13

Defendant does not challenge his search incident to arrest nor his voluntary statement concerning the firearm in his pocket.  The Court finds that Defendant was lawfully arrested and that the firearm was retrieved from Defendant's person during a valid search incident to arrest. The recovery of the firearm is also justified on the basis of officer safety; the gun was confiscated after Defendant had been arrested for obstruction and volunteered that he had a gun in his pocket. Therefore, Defendant's Motion to Suppress is denied as to the firearm.

### C.  The Impound

Defendant next argues that the impound and inventory search of his car violated his Fourth Amendment rights because officers never had lawful possession of his car; he was outside of the car when the police pulled him over, restricting the officers' warrantless search to Defendant's person.  (ECF No. 19, PageID #80–81; ECF No. 29, PageID #188–93).  While Defendant's motion focuses on the argument that officers never lawfully possessed Defendant's car, their post-hearing brief also argues that Officer Gutscher's testimony suggests he did not follow objective, standardized criteria when impounding the car.  Specifically, Defendant takes issue with Officer Gutscher's testimony that the Canton Police Department's impound policy gives him discretion as to whether to impound a car.  (ECF No. 27, PageID #130–31), and that such discretion is inconsistent with the Supreme Court's mandate that all impounds be based on "standardized criteria." (ECF No. 29, PageID #188 (citing *Colorado v. Bertine*, 479 U.S. 367, 375–76 (1987)).

The Government argues that the Fourth Amendment permits impoundment decisions and inventory searches that are objectively justifiable, regardless of an officer's subjective intent.  (ECF No. 28, PageID #176) (citing *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001)).  The Government also cites to *United States v. Snoddy*, 976 F.3d 630, 636 (6th Cir. 2020) for the proposition that an officer like Officer Gutscher—one who arrests the sole occupant of the car, and

14

the car would be left by the side of the road in the middle of the night—can reasonably impound the car, and such would be "objectively justifiable." (ECF No. 28, PageID #176).

Officer Gutsher offered the following testimony related to the impound:

> Q.   Did they have a policy about when to take – when to decide to impound cars or not?
>
> A.   Not when.  It's officer discretion on impounding vehicles.
>
> Q.   And this particular night, because you are arresting the owner and driver of the vehicle and it was a high-crime area, you didn't think it was prudent to leave the car there?
>
> A.   Yes.

(ECF No. 27, PageID #131).  Fourth Amendment jurisprudence anticipates that police officers sometimes use their discretion when impounding cars.  *Snoddy*, 976 F.3d 634 (citing *United States v. Jackson*, 682 F.3d 448, 454 (6th Cir. 2012)).  The Sixth Circuit's *Snoddy* decision found an impound similar to the impound here to be valid.  There, an officer pulled the defendant over on a public road for speeding and discovered that he had outstanding warrants for his arrest.  *Id.* at 632. An officer arrested the defendant and informed him that he had to tow the car and, therefore, take an inventory of its contents.  *Id.*  During the eventual search of the defendant's car, the officer discovered drugs, firearms, and other paraphernalia.  *Id.*  When the defendant argued that the fruits of the search should be suppressed because the search was pretextual, the Sixth Circuit stated:

> The problem for Snoddy is that, regardless of Trooper Maone's motivations and beliefs, Trooper Malone was going to have the car towed no matter what.  Snoddy was the sole occupant of the car, and the car would have been left on the side of the highway near an intersection in the middle of the night where it could be stolen, vandalized, or hit by another vehicle.  "The Fourth Amendment permits impoundment decisions and inventory searches that are objectively justifiable . . . regardless of an officer's subjective intent." *Kimes*, 246 F.3d at 805 (citing *Whren*, 517 U.S. at 812).  In these circumstances—where the arrestee is the sole occupant of the car and the car would be left on the side of the road in the middle of the night— impounding the car reasonably could be seen as objectively justifiable.

15

*Id.* at 636.

Like *Snoddy*, the Canton Police Department gives their officers discretion to impound a car following an arrest.  Also like *Snoddy*, Defendant was the lone remaining occupant of his car, which was parked on the side of the road at night.  While Defendant did not have outstanding warrants, officers discovered that he was under disability for possessing the firearm he had in his pocket following his arrest for obstruction.  This Court sees no need to depart from *Snoddy*'s logic.  The Sixth Circuit found a valid impoundment under very similar circumstances to those now before this Court. This Court likewise finds that Defendant's car was lawfully impounded, and the impoundment did not violate Defendant's Fourth Amendment rights.

### D.  The Inventory Search

Finally, with regard to the inventory search, "a vehicle is lawfully seized and, thus, subject to an inventory search if it is lawfully impounded."  *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012).  An inventory search violates the constitution when "the evidence establishes that the 'police acted in bad faith or for the sole purpose of investigation' in conducting an inventory search."  *United States v. Snoddy*, 976 F.3d 630, 634 (6th Cir. 2020).  Although this Court has found the impoundment lawful, Defendant argues that the inventory search is not because the Government failed to establish that the inventory search was conducted pursuant to a standardized policy.  (ECF No. 19, PageID #80–81; ECF No. 29, PageID #190–93).  The Government does not address the lack of evidence or testimony concerning a standardized policy upon which officers conducted their inventory search; though the Government's briefs acknowledge the need for standardized criteria to support an inventory search, the Government insists that lawful impoundment produces a lawful inventory search.  (ECF No. 22, PageID #93–94; ECF No. 28, PageID #175–76).

16

At the suppression hearing, the government did not produce the Canton Police Department's inventory policy.  The Government's witness, Officer Gutscher, stated that the inventory he performed was at his discretion, but also that the department has a policy for inventory searches:

> Q.     And I would assume, because cars get impounded on the regular, you have to have some discretion about not taking the entire contents of the car?
>
> A.     Yes.
>
> Q.     Even if those shoes may be Air Jordans and may cost a lot of money, those may or may not be – get taken?
>
> A.     Yes.
>
> Q.     So it really is discretion of the officer?
>
> A.     Yes.
>
> Q.     Is there a policy with the Canton Police Department about inventories?
>
> A.     Yes.
>
> Q.     Okay.
>         And did you follow that policy that night?
>
> A.     Yes.

ECF No. 27, PageID #131.  No further testimony was given regarding the Canton Police Department's inventory policy, though Officer Gutscher also testified that he thought he would find another firearm in Defendant's backpack, which was near the front seat inside Defendant's car.  (*Id.* at PageID #126 ("I see there's nothing valuable in the door panel worth tagging for safekeeping, so then I move on to the driver's seat where I picked up the bag to see if there were any valuables in there, possibly another firearm.")).

Defendant is correct that officers must base an inventory search on some sort of standardized policy. *United States v. Alexander*, 965 F.3d 910, 915 (6th Cir. 2020); *Colorado v. Bertine*, 479 U.S. 367 (1987). Officers are nevertheless permitted to "exercise judgment in furthering the purposes behind the inventory search." *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). But *Bertine*, to which both parties cite, provides that such discretion may only be used "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 375. Moreover, "[w]hether a police department maintains a written policy is not determinative, where testimony establishes the existence ***and contours*** of the policy." *Tackett*, 486 F.3d at 232 (emphasis added). In *Tackett*, the absence of a departmental policy did not preclude the Court from finding a valid inventory search, because an officer testified, *inter alia*, that "it was department policy to search closed, unlocked containers." *Id.*

In *Florida v. Wells*, 495 U.S. 1, 3 (1990), the Supreme Court held that standardized criteria or established routine "must regulate the opening of containers found during inventory searches." The Court went on to explain that policies governing inventory searches "should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches turn into 'a purposeful and general means of discovering evidence of crime.'" *Id.* (quoting *Bertine*, 479 U.S. at 376 (Blackmun, J., concurring)).

*Wells* went on to explain that the policy need not be mechanical; the policy need not state that police officers may open all containers or no containers at all. Instead, "a police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose

contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment." *Id.* at 4.

The Supreme Court noted, however, that the law enforcement agency at issue there—the Florida Highway Patrol—had no policy at all regarding the opening of closed containers encountered during an inventory search.  "We hold that absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment and that the marijuana which was found in the suitcase, therefore, was properly suppressed by the Supreme Court of Florida." *Id.*

In *United States v. Gregory*, 983 F.2d 1069 (Table) (6th Cir. 1992), the government did not introduce the relevant departmental inventory policy into evidence.  *Id.* at *6–7.  Relevant here, the defendants challenged (1) searches conducted in backpacks kept on their persons, and (2) the search of a defendant's truck.  The Sixth Circuit sustained the searches of the backpacks under the search-incident-to-arrest exception to the warrant requirement.  *Id.* at *6.  Regarding the truck, in which there was no "container issue," the Court found that the search was constitutional because an officer testified "that a policy for inventorying impounded vehicles does exist and that he followed it." *Id.* at *7.

This Court's reading of *Gregory* is that it does not apply when there is no evidence of a policy nor testimony regarding the policy's container guidelines.  An officer's statement that an inventory policy exists and that he followed that policy is insufficient under *Wells*'s mandate that the contours of such a policy be even vaguely drawn for the Court, and it is also insufficient under other existing Sixth Circuit precedent.  *See Florida v. Wells*, 495 U.S. 1, 3 (1990) (finding that standardized criteria or established routine "***must*** regulate the opening of containers found during inventory searches") (emphasis added); *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007) (requiring admission of either the policy itself or testimony outlining the contours of the policy).

Here, Officer Gutscher's testimony that an inventory policy exists and that he followed it falls far short of establishing the parameters of the policy as it pertains to opening containers.

Cases in which this Circuit have found valid inventory searches in the absence of standardized procedures have relied on well-recognized exceptions to the Fourth Amendment's warrant requirement. For example, in *United States v. Alexander*, 954 F.3d 910, 916 (6th Cir. 2020), the Court found that an officer's discovery of drugs in an arrestee's car violated the Fourth Amendment under *Wells* because there was no departmental policy on inventory searches. Nevertheless, the Court found a valid search under the inevitable discovery doctrine; drugs in the arrestee's waistband would have prompted a "vehicle search justified under the search incident to arrest doctrine or the automobile exception to the warrant requirement." *Id.* at 917.

This Court can locate no cases in which an inventory search that included closed containers was rendered valid when no evidence of a standardized policy was admitted into evidence, no officer testified about the contours of the policy, and, as in *Alexander*, no other circumstances could have justified the search. The search-incident-to-arrest exception cannot apply here, where the defendant was arrested outside of his car (meaning that the inside of the car was not within his immediate control). *Chimel v. California*, 395 U.S. 752, 763 (1969) (defining the search-incident-to-arrest exception as one that applies to the search of an unsecured arrestee "[a]nd the area into which an arrestee might reach in order to grab a weapon or evidentiary items"). The automobile exception is likewise inapplicable, since officers were only aware of Defendant's possession of a firearm under disability and obstruction of official business—not the drugs—before the inventory search occurred; the officers lacked probable cause to reasonably believe that there was contraband his car. *Arizona v. Gant*, 556 U.S. 332, 344 (2009).

The Court is unable to right the unlawfulness of the officers' search of Defendant's car under any other exception to the Fourth Amendment's warrant requirement. Officer Gutscher's

conflicting testimony—that he inventoried the car based on his discretion but that he also followed his departmental inventory policy—cannot bring this inventory search back to the constitutional side of the line. Moreover, Officer Gutscher's testimony that he thought he would find another firearm in Defendant's car speaks directly to the Supreme Court's admonition against officers using inventory searches as "a purposeful and general means of discovering evidence of crime." *Florida v. Wells*, 495 U.S. 1, 3 (1990) (quoting *Bertine*, 479 U.S. at 376 (Blackmun, J., concurring)). Without any information concerning the department's inventory policy regarding containers, Officer Gutscher's statement that a policy exists and that he followed it falls short of both the Supreme Court's *Wells* mandate and the Sixth Circuit's *Tackett* holding requiring, at minimum, testimony about the contours of the department's container policy. Holding otherwise would eviscerate the burden placed on the Government by both cases, reducing the constitutionality of an inventory-container search to two yes or no questions without any corroboration or further elucidation. It would not account for the potential of human error in the officer's recollection or understanding of the policy, either at the time of the search or at the time he testifies. When weighed against a person's inalienable right to be subject to only reasonable searches and seizures, such a holding would render the Fourth Amendment's protections meaningless.

The Court therefore finds that the inventory search of Defendant's car was unlawful and violated Defendant's Fourth Amendment rights. The methamphetamine found in the closed backpack inside his car as the result of the unconstitutional inventory search is therefore suppressed.

### III.    CONCLUSION

The Court finds that law enforcement had probable cause to justify the traffic stop due to the officer's belief that Defendant violated Ohio Rev. Code Ann. 4511.39. After the stop was

initiated, Defendant's defiance of officer commands and his apparent effort to flee established probable cause to arrest him for obstructing the officers' execution of their official duties.  When officers lawfully arrested Defendant, they were constitutionally permitted to impound Defendant's car and conduct a lawful inventory search of same.   However, the inventory search of the vehicle violated Defendant's Fourth Amendment rights; there is no evidence before the Court of the parameters of any Canton Police Department policy regarding the opening of containers during vehicle inventory searches.  For these reasons, Defendant's Motion to Suppress (ECF No. 19) is **GRANTED IN PART** as to the methamphetamine found in the backpack in the car and **DENIED IN PART** as to the gun found on Defendant's person**.**

   **IT IS SO ORDERED.**

   **Date: January 23, 2025**

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**